#30312-r-PJD
**2023 S.D. 69**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ABBY ENGEL,                                    Plaintiff and Appellee,

    v.

COLLIN GEARY,                                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ROBERT L. SPEARS
Judge

\* \* \* \*

ANTHONY J. TEESDALE
Brookings, South Dakota                   Attorney for defendant and
                                          appellant.


KALEB PAULSEN of
Lockwood & Zahrbock Kool Law Office
Sioux Falls, South Dakota                 Attorneys for plaintiff and
                                          appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
OCTOBER 3, 2023
OPINION FILED **12/28/23**

#30312

DEVANEY, Justice

[¶1.]		Abby Engel, a South Dakota resident, commenced a divorce action in South Dakota against nonresident defendant Collin Geary. In a pro-se filing, Geary objected to the sufficiency of the service of process and to the South Dakota circuit court's jurisdiction. The court overruled Geary's objections, and after a one-day divorce trial, during which Geary did not appear, the court entered a judgment and decree of divorce granting Engel a divorce and awarding the parties certain property. Geary appeals, claiming that the circuit court did not have authority to enter orders against him or his property interests because it did not acquire personal jurisdiction over him. We reverse and remand.

## Factual and Procedural Background

[¶2.]		Engel and Geary were married on January 12, 2022, in California. Engel is originally from South Dakota, but at the time of the marriage, she was stationed in California on active duty with the United States Marine Corps. According to Engel, approximately eight months after their marriage, on September 2, 2022, Geary kicked her out of the home and the two separated. She was on leave with the Marines at the time and returned to South Dakota.

[¶3.]		On September 27, 2022, Engel commenced a divorce action against Geary in South Dakota, asserting extreme cruelty or, in the alternative, irreconcilable differences as grounds. Her complaint requested an equitable division of the parties' property and debts and an order requiring that Geary pay her attorney fees. An affidavit of service completed by a process server in California

stated that Geary was served on October 22, 2022, via substitute service on his roommate, with the summons and verified complaint, among other documents.

[¶4.] On November 16, 2022, Geary, acting pro se, filed a South Dakota Unified Judicial System form for self-represented litigants titled, "Responding Affidavit," and attached documents in support, including notarized typed statements by himself and his roommate. Geary asserted that he was not served with the verified complaint and summons but, instead, was served with a document titled, "Stipulation and Agreement." He further noted that it was only after he contacted the clerk of courts' office in Codington County, South Dakota, that he received the summons and complaint via email on November 14, 2022. Geary's affidavit requested that the circuit court dismiss Engel's divorce action for "lack of jurisdiction and or improper service of required documents."

[¶5.] At a hearing on January 30, 2023, set by Engel to establish a scheduling order for the divorce trial, the circuit court first addressed what it construed to be Geary's "objection" to the "[c]ourt having jurisdiction to hear this divorce matter." Geary appeared telephonically without counsel. He argued that Engel failed to properly serve him because he was not served with the documents identified in the process server's affidavit of service. He advised the court that he had commenced a divorce action in California on October 25, 2022, and argued that California would be the more appropriate place to handle the divorce action because the marriage occurred in California and Engel lived and worked in California. He also noted that he does not own assets or property in South Dakota.

[¶6.] During this hearing, both Geary and Engel testified. In response to questions by counsel for Engel, Geary reiterated his view that he was not properly served. In response to questions concerning what would need to be resolved as part of the divorce, Geary agreed that he and Engel did not have any children, joint credit cards, or outstanding medical debt. He also agreed that Engel took her personal property with her when the couple separated and that he does not personally own any land. However, Geary testified that a matter in dispute concerned a debt associated with damage to his pickup resulting from an accident he claimed Engel caused. In his view, Engel should be responsible for the debt. He also testified that a tax liability could be a matter of dispute, although he was unsure because it was something related to Engel's taxes.

[¶7.] Engel testified that she joined the military in January 2019 and was stationed in California when she and Geary were married. After she and Geary separated, she was honorably discharged from the service and returned to South Dakota. She further testified that while she was in the military, she always maintained her South Dakota residency. Engel claimed that the couple's property had already been divided; however, she did not testify about the debt associated with the damage to the truck or the tax liability.

[¶8.] At the close of the hearing, Engel's counsel argued that Geary did not establish insufficient service of process and that proceeding on the divorce action in South Dakota would be proper because Engel is a South Dakota resident. Engel's counsel also claimed that because the parties had already divided their personal property, they "each need to take what's in their name already and go their

-3-

separate ways." During his closing argument, Geary reasserted his argument that "California seems to be the most appropriate forum for [the divorce] to be heard" and noted that he has had no contact with the State of South Dakota.

[¶9.] The circuit court issued an oral ruling denying Geary's request to dismiss the action, finding that Engel filed for divorce in South Dakota as a South Dakota resident and that the South Dakota divorce action was commenced prior to Geary filing for divorce in California. The court did not specifically address in this oral ruling whether Geary was properly served; however, from the court's earlier remarks during the hearing, it seemed to reject the claim that any service of process issues affected the court's jurisdiction. The court issued a written order on February 2, 2023, concluding that it "has jurisdiction over the parties and this matter pursuant to federal and state law based upon [Engel] being an active duty member who is a resident of South Dakota[.]" It further ordered that "form [sic] non-convenience is not applicable based upon the length of the marriage, the location of the property, the size of the marital estate, the parties owning no real property, and the number of witnesses." The court set the divorce trial to commence on March 7, 2023.

[¶10.] On February 27, 2023, Geary, now represented by South Dakota counsel via a special appearance to challenge jurisdiction, filed a motion for the circuit court to reconsider its decision entered in the February 2 order and to bifurcate the divorce trial to allow the court in California to resolve property-related matters. Geary argued that South Dakota lacks personal jurisdiction over him because he was not properly served, he has not subjected himself to the jurisdiction

of the South Dakota court, and he does not have sufficient minimum contacts for a South Dakota court to exercise personal jurisdiction over him. He noted that the circuit court did not analyze this question during the January 30 hearing or in its written February 2 order. Geary also filed a motion to continue the March 7 divorce trial to allow time for a hearing on his motion to reconsider and bifurcate. In an email response, the circuit court denied Geary's motions.

[¶11.] Neither Geary nor his counsel appeared at the divorce trial on March 7. At the commencement of trial, counsel for Engel told the circuit court that after speaking with Geary's counsel, it was his understanding that Geary's counsel ceased representing him after the court denied Geary's motions because his representation was limited to a special notice of appearance in furtherance of Geary's jurisdictional claim. The court then read on the record its email ruling denying Geary's motions and directed counsel for Engel to proceed. Engel was the only witness to testify at the divorce trial. In addition to testifying about circumstances she believed warranted granting her a divorce based on extreme cruelty, she testified about matters related to her property interests and Geary's.

[¶12.] At the conclusion of the trial, the circuit court issued an oral ruling, finding that it had personal jurisdiction over the parties and subject matter jurisdiction over the divorce. The court granted Engel a divorce based on extreme cruelty. In light of Engel's testimony during the divorce trial and both parties' testimony on January 30, the court found that Engel has "the property to which [she is] entitled" and "Geary has the property to which he is entitled[.]" The court therefore said that "no further division of property is required[.]" However, the

court then entered specific directives as it relates to the parties' property, including bank accounts and debts.

[¶13.]     In its written judgment and decree of divorce, the circuit court restated its finding that Engel is entitled to a divorce based on extreme cruelty and the parties are to retain all items currently in their possession and be the sole owners of such property. Consistent with its oral ruling, the court entered specific orders related to the parties' property. The court listed the vehicles purportedly owned by Geary and awarded those vehicles to him. The court did not list specific financial accounts owned by Geary; however, it ordered that he retain any and all financial accounts solely in his name. The court specifically listed accounts owned by Engel and awarded those solely to her. The court also awarded each party sole ownership of their retirement accounts and life insurance policies. In regard to disputed property matters raised at both the January 30 and March 7 proceedings, the court ordered that Geary be responsible for the damage to his truck from the accident that Geary claimed Engel caused. The court also ordered Geary and Engel to file their 2022 taxes as married but filing separate and that Geary claim $40,834.11 as income on his taxes reflecting income he generated by selling tools using Engel's eBay account. The court found that "this division of property and debts is just and equitable and that neither party shall owe the other party a cash equalizing payment."

[¶14.]     On March 29, 2023, Geary, through his same South Dakota counsel, filed a motion to reconsider and a motion to vacate and amend the judgment and decree of divorce. Geary once again argued that the circuit court lacked personal

-6-

jurisdiction over him. He noted that the court failed to conduct the necessary analysis when a party challenges personal jurisdiction, namely whether the Long Arm Statute applies and whether an assertion of jurisdiction comports with federal due process requirements. He then asserted that no such personal jurisdiction existed under the applicable law. Geary thus argued that the judgment and decree of divorce must be vacated to the extent it adjudicated his property interests or imposed financial obligations on him. The record does not contain the circuit court's ruling on this motion; however, Engel claims in her brief on appeal that the court denied it.

[¶15.] Geary appeals, asserting that the circuit court did not have personal jurisdiction over him and thus could not enter personal judgments against him or against his property interests.

## Standard of Review

[¶16.] "We review issues regarding a court's jurisdiction as questions of law under the de novo standard of review." *Daktronics, Inc. v. LBW Tech Co., Inc.*, 2007 S.D. 80, ¶ 2, 737 N.W.2d 413, 416 (quoting *Grajczyk v. Tasca*, 2006 S.D. 55, ¶ 8, 717 N.W.2d 624, 627).

## Analysis and Decision

[¶17.] On appeal, Engel does not argue or identify any facts establishing that the circuit court had personal jurisdiction over Geary. Instead, she contends that Geary waived the right to challenge personal jurisdiction or, in the alternative, that this issue need not be considered because the circuit court did not exceed its jurisdiction by entering the divorce decree at issue here.

### *Whether Geary waived his challenge to personal jurisdiction*

[¶18.] Engel contends that Geary did not preserve his right to challenge personal jurisdiction because, in her view, he did not raise the issue until his counsel filed a motion to reconsider after the January 30 hearing. Engel notes that Geary used the word "jurisdiction" in his responding affidavit and in his arguments during the January 30 hearing. However, she asserts that Geary was referring solely to the circuit court's jurisdiction over the *divorce*, not his person.

[¶19.] It is well settled that the defense of personal jurisdiction can be waived if it is not raised in the first responsive pleading or by motion before the first responsive pleading. *Grajczyk*, 2006 S.D. 55, ¶ 9, 717 N.W.2d at 628 (quoting 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1391, at 515 (3d ed 2004)). Under SDCL 15-6-12(b)(2), "[e]very defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (2) Lack of jurisdiction over the person[.]"

[¶20.] Geary did not use the specific phrase "personal jurisdiction" in his responding affidavit or in his arguments during the January 30 hearing. However, a review of the affidavit as a whole and the January 30 hearing transcript reveals that Geary was challenging the circuit court's personal jurisdiction over him. Although he stated in his notarized statement attached to his responding affidavit that he does "*not agree or consent* that the County of Codington, South Dakota have [sic] jurisdiction over *this matter*[,]" his arguments in support of this claim refer to his lack of contact with South Dakota. (Emphasis added.) For example, he asserted

that he and Engel "lived in California at the time of the marriage"; "[t]he marriage license was issued in the City of Laguna Hill, County of Orange, State of California"; and they "both still currently reside in California." Also, during the hearing, Geary argued multiple times that the court does not have jurisdiction because he does not live in South Dakota and does not own property in this State. He specifically asserted that he has "no contact with South Dakota" and that he "did not agree to relinquishing jurisdiction to South Dakota[.]" Further, when the circuit court asked whether he had any additional arguments related to the court's jurisdiction, Geary replied that it "looks like probably a violation of due process rights for South Dakota to take jurisdiction of this case." Finally, during his closing argument, Geary asserted that "Ms. Engel far exceeds the minimum contact for her to be considered a California resident" and he has "no contact, whatsoever, with the State of South Dakota[.]"

[¶21.] Geary's contentions—where he resides, the type of contacts he has had with the forum state, his lack of ownership of property in the forum state, his lack of consent to jurisdiction, and due process concerns—specifically bear on the question whether the circuit court here could exercise personal jurisdiction over him. As this Court has said, "[t]he Due Process Clause affords protection against judgments of a forum with which a person has no meaningful contacts, ties, or relations." *State v. Grand River Enterp., Inc.*, 2008 S.D. 98, ¶ 12, 757 N.W.2d 305, 309. *See also Kustom Cycles, Inc. v. Bowyer*, 2014 S.D. 87, 857 N.W.2d 401 (looking at the defendant's contacts with the forum state, including the presence of defendant's physical property in the forum state); *Met Life Auto and Home Ins. Co.*

*v. Lester*, 2006 S.D. 62, 719 N.W.2d 385 (examining whether the nonresident party agreed to submit to the South Dakota circuit court's jurisdiction).

[¶22.]     However, Engel further argues that Geary needed to be more specific on whether he was raising an issue with personal or subject matter jurisdiction and his failure to "unambiguously" object to personal jurisdiction warrants deeming the defense waived. As support, Engel directs this Court to *Alger v. Hayes*, 452 F.2d 841, 843 (8th Cir. 1972), a case in which she claims the federal court concluded that an ambiguous objection to personal jurisdiction is insufficient to preserve the defense. However, the court's decision in *Alger* actually supports concluding that Geary preserved his challenge to the circuit court's personal jurisdiction. While the court in *Alger* determined that the "defendant's responsive answer that the court 'lacks jurisdiction' was ambiguous as to whether jurisdiction over the person or jurisdiction over the subject matter was the basis of the attack," the court then "look[ed] to the subsequent proceedings for clarification of defendant's intent." *Id.* So too here, even if Geary's responding affidavit did not use the words "personal jurisdiction," the arguments he made at the January 30 hearing were sufficient to clarify that he was objecting to personal jurisdiction. *See Grajczyk*, 2006 S.D. 55, ¶ 16, 717 N.W.2d at 630 (viewing the party's objection to the propriety of the service of process in context when concluding that although the defendant "did not specifically use the phrase 'substitute service,'" the "objection to 'no service' was enough to preserve an objection to the sufficiency of the substitute service").

[¶23.]     Notably, when the circuit court denied Geary's motion to reconsider, it did not conclude that Geary waived the right to challenge the circuit court's

jurisdiction. On the contrary, the court acknowledged that it might not have jurisdiction to determine issues related to the parties' property. In this regard, the court informed the parties that issues concerning jurisdiction could be raised anytime. Further, the court stated that while it has "jurisdiction to at least hear the evidence and grant a divorce," the court's jurisdiction "[a]s to the debt and property issues, [ ] may change depending on how the evidence comes in at the trial[.]" Based on our review of the record, Geary sufficiently preserved his challenge to the circuit court's personal jurisdiction.

### *Whether the circuit court properly exercised personal jurisdiction over Geary*

[¶24.]     As noted above, Engel does not argue that the circuit court had personal jurisdiction over Geary, likely because it is clear the court did not. A South Dakota court's authority to assert personal jurisdiction over a nonresident defendant implicates two inquiries—whether jurisdiction exists under our Long Arm Statute, SDCL 15-7-2, and if it does, "whether the proposed assertion of jurisdiction comports with federal due process requirements[,]" *Daktronics*, 2007 S.D. 80, ¶ 4, 737 N.W.2d at 416 (citation omitted). The due process inquiry examines whether the nonresident defendant has "sufficient minimum contacts with South Dakota to conclude that the assertion of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Id.* ¶ 5.

[¶25.]     Here, none of the facts pled in Engel's complaint and nothing in the testimony presented at the January 30 hearing supports a conclusion that personal jurisdiction over Geary exists under South Dakota's Long Arm Statute. Further, nothing in the record establishes that Geary has "certain minimum contacts with

[South Dakota] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *See Kustom Cycles*, 2014 S.D. 87, ¶ 10, 857 N.W.2d at 406–07 (quoting *Int'l Shoe Co. v. Wash., Off. of Unemp't Comp. & Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)). This Court applies "a three-step analysis in determining whether a defendant has minimum contacts sufficient to give South Dakota personal jurisdiction over that defendant." *Id.* ¶ 10, 857 N.W.2d at 407.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state, thus invoking the benefits and protections of its laws. Second, the cause of action must arise from [the] defendant's activities directed at the forum state. Finally, the acts of [the] defendant must have substantial connection with the forum state to make the exercise of jurisdiction over [the] defendant a reasonable one.

*Id.* (alterations in original) (quoting *Marschke v. Wratislaw*, 2007 S.D. 125, ¶ 15, 743 N.W.2d 402, 407). Geary has not purposefully availed himself of the privilege of conducting activities in South Dakota and has thus not invoked the benefits and protections of its laws. Neither the marriage nor the divorce arose from Geary's activities in South Dakota, and Engel has not identified any acts by Geary that suggest a substantial connection to South Dakota. *See Davis v. Otten*, 2022 S.D. 39, ¶ 12, 978 N.W.2d 358, 363 (providing that the party seeking to establish personal jurisdiction has the burden of making a prima facie showing of such jurisdiction). As such, the circuit court erred in finding in its oral ruling and written judgment and decree of divorce that it has personal jurisdiction over Geary.

***Whether the circuit court entered orders against Geary in excess of its authority***

[¶26.]      Geary acknowledges that because Engel is a South Dakota resident, the circuit court "had a legitimate interest and the capability to grant Engel a divorce[.]"[1]  However, he argues that because the court did not have personal jurisdiction over him, the court erred when it entered orders affecting his property interests.  As support, he directs this Court to *Estin v. Estin*, a case in which the United States Supreme Court determined that one court's jurisdiction to determine the parties' marital status does not give that same court jurisdiction to decide "every other legal incidence of the marriage" absent personal jurisdiction over the parties whose property interest is being affected.  334 U.S. 541, 545, 68 S. Ct. 1213, 1216, 92 L. Ed. 2d 1561 (1948).  "Jurisdiction over an intangible can indeed only arise from control or power over the persons whose relationships are the source of the rights and obligations."  *Id*. at 548, 68 S. Ct. at 1218.  "The result," the Court explained "is to make the divorce divisible[,]" such that a court with personal jurisdiction over only one spouse to the action has authority to dissolve the marriage, but it does not have authority to determine the parties' property rights and obligations incident to the marriage.  *Id*. at 549, 68 S. Ct. at 1218.

---

1.      As this Court has explained, "The domicil of one spouse within a State gives power to that State . . . to dissolve a marriage wheresoever contracted." *Wells v. Wells*, 451 N.W.2d 402, 404 (S.D. 1990) (quoting *Williams v. State of N.C.*, 325 U.S. 226, 229–30, 65 S. Ct. 1092, 1095, 89 L. Ed. 1577 (1945)).  Further, "[c]ircuit courts may not refuse to hear divorce proceedings properly commenced first in South Dakota, in favor of another state's jurisdiction." *Langdeau v. Langdeau*, 2008 S.D. 44, ¶ 18, 751 N.W.2d 722, 729 (emphasis omitted).

[¶27.] Engel does not appear to dispute the propriety of the Supreme Court's decision in *Estin* or the concept of a divisible divorce. This is not surprising, given that this concept has been applied by many courts.[2] In fact, this Court has recognized the concept, albeit in a different scenario, in *Lustig v. Lustig*, by referring to the "divisible divorce doctrine" in a parenthetical when determining that a South Dakota circuit court must decide the parties' divorce, while the Minnesota court could decide child custody. 1997 S.D. 24, ¶ 14, 560 N.W.2d 239, 245 (citing *Smith v. Smith*, 459 N.W.2d 785, 787 (N.D. 1990)).

[¶28.] Engel nevertheless contends the circuit court did not err under the circumstances because "[t]o the extent that the divorce decree touched on the marital estate (such as it was) and the parties' property interest, it did so based on judicial admissions by Mr. Geary." She further contends that "[i]t is clear the court did not believe it was dividing the marital estate because the court did not value the property and did not take up the argument of whether the property was marital or separate."

[¶29.] A review of the circuit court's oral ruling and written judgment and decree of divorce does not support Engel's assertion that the court acted within its authority as it relates to the parties' property. While both parties testified that Engel took her personal property to South Dakota and Geary retained his in

---

2. She cites a secondary source for the view that courts across the nation have held that the divisible divorce doctrine applies to the equitable division of property. 1 Equit. Distrib. of Property, 4th § 3:12 (Feb. 2023) (providing that "courts uniformly agree that the standard established by the Supreme Court cases applies to equitable distribution" even though the Supreme Court has not been asked to consider the issue).

California after the parties separated, the court nevertheless entered orders specifically awarding certain items of property and corresponding debts to each party as typically done when dividing marital property, including their vehicles, bank accounts, credit cards, retirement accounts, and life insurance policies. Further, although the parties have not asserted claims against each other's personal property, the transcript from the January 30 hearing makes clear that Geary disputed his obligation to pay for damage he testified Engel caused to his pickup and any obligation related to a tax obligation that he believed Engel wanted him to be responsible for. As it relates to these two matters, the circuit court entered personal judgments against Geary, making him responsible for both the truck damage and the tax obligation and ordering him to file his 2022 taxes in a manner that claims this tax obligation. Tellingly, after entering specific directives relating to the parties' property in its written judgment and decree, the court stated that "this *division* of property and debts is just and equitable and that neither party shall owe the other party a cash equalizing payment." (Emphasis added.) Thus, contrary to Engel's view of the court's decision, it did in fact divide the parties' property.

[¶30.]     Long ago, in *Nelson v. Nelson*, this Court examined whether a South Dakota circuit court erred in adjudicating the nonresident wife's action for a division of property and award of alimony against the husband, a South Dakota resident, when the wife had previously obtained a judgment and decree of divorce in California that did not divide property or award alimony. 71 S.D. 342, 24 N.W.2d 327 (1946). While the California court granted the wife a divorce, it did not dispose

of the husband's property or decide alimony because it did not have jurisdiction over the husband—he made no appearance in the California action and did not own property in California. This Court acknowledged California's lack of jurisdiction, noting that "[t]he great weight of authority is to the effect that where a divorce has been granted to the wife, in another state, on substituted service, and where the husband has made no appearance in the action and has no property in that state, the court granting the divorce has no jurisdiction to award alimony." *Id.* at 345, 24 N.W.2d at 329. However, as it pertained to the wife's action in South Dakota, the Court concluded that the South Dakota court had jurisdiction to divide property and award alimony because the husband resided in South Dakota and owned property here. *Id.* at 345–46, 24 N.W.2d at 329.

[¶31.] Although the scenario is flipped here because South Dakota, not California, is adjudicating matters related to the parties' property, *Nelson* supports the determination that the circuit court did not have jurisdiction to enter a personal judgment against Geary or enter orders related to his property because the South Dakota court did not have personal jurisdiction over him and his property was not in South Dakota. As this Court more recently explained, "[t]he consistent constitutional rule has been that a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant." *Spiska Eng., Inc. v. SPM Thermo-Shield, Inc.*, 2011 S.D. 23, ¶ 8, 798 N.W.2d 683, 686 (citation omitted); *see also Kulko v. Cal. Super. Ct.*, 436 U.S. 84, 91, 98 S. Ct. 1690, 1696, 56 L. Ed. 2d 132 (1978) ("It has long been the rule that a valid judgment

imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant.").

[¶32.] We therefore conclude that the circuit court erred when it entered orders relating to the division of property and when it imposed obligations on Geary personally.[3] On remand, the circuit court is directed to vacate these directives from the judgment and decree of divorce.

[¶33.] Reversed and remanded.

[¶34.] JENSEN, Chief Justice, and KERN, SALTER, and MYREN, Justices, concur.

---

3. In her brief on appeal, Engel contends that even if the circuit court did not have personal jurisdiction over Geary, it had jurisdiction to determine the parties' rights to her "personal property or any property otherwise held in South Dakota[.]" However, she does not cite law in support of this proposition or to support that the circuit court could, without personal jurisdiction over Geary, make an equitable *division* of the parties' property as requested by Engel in her complaint for divorce. We therefore decline to address Engel's argument. *See Veith v. O'Brien*, 2007 S.D. 88, ¶ 50, 739 N.W.2d 15, 29, *superseded on other grounds by statute* (noting that the failure to cite supporting authority waives argument).